**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 20-cv-01742-NYW

UNITED STATES OF AMERICA, ex rel., BRYAN SWANTON,

      Plaintiff-Relator,

v.

ZHONG "HENRY" ZOU, individually, and in his official capacity as owner of INSTEC,
INSTEC, INC.,
ZOE SCIENCE & TECHNOLOGY CO., LTD. d/b/a INSTEC,
SHANGHAI HENGSHANG PRECISION INSTRUMENT, CO. d/b/a INSTEC, and
BRUKER CORPORATION,

      Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on Plaintiff-Relator's Motion for Statutory Attorneys' Fees, Expenses and Costs ("Motion for Attorneys' Fees" or "Motion") [Doc. 58, filed August 31, 2023].[1]  Upon careful review of the Motion and corresponding briefing, the entire case file, and the applicable case law, the Motion for Attorneys' Fees is respectfully **GRANTED IN PART and DENIED IN PART**.

**BACKGROUND**

The background of this case has been discussed in detail previously, *see, e.g.*, [Doc. 49], and therefore, will only be summarized here.  This is a False Claims Act ("FCA")

---

[1] When referring to documents filed in this action, this Court uses the convention [Doc. ___], referring to the docket and page number assigned by the District of Colorado's Electronic Case Files ("ECF") System. When referring to documents filed in another matter, this Court uses the convention [ECF No. ___], still referring to the docket and page number assigned by the ECF System.

case in which Plaintiff-Relator Bryan Swanton ("Mr. Swanton" or "Plaintiff-Relator") filed a *qui tam*[2] Complaint on June 15, 2020, [Doc. 1], alleging that Defendants Zhong "Henry" Zou ("Dr. Zou"),[3] Instec, Inc. ("Instec"), Zoe Science & Technology Co., Ltd. d/b/a Instec, Shanghai Hengshang Precision Instrument, Co. d/b/a Instec, and Bruker Corporation violated the FCA, 31 U.S.C. §§ 3729, *et seq.*, by failing to comply with the requirements of the Buy American Act ("BAA"), 41 U.S.C. §§ 8301, *et seq.*, when selling Instec products to federal agencies and national laboratories.  *See generally* [Doc. 1].  Specifically, Plaintiff asserted four causes of action in the Complaint for "violations of the False Claims Act":

> Count I: "Violations of 31 U.S.C. § 3729(a)(1)(A), Presenting and or causing the Presentment of False Claims to the United States"
>
> Count II: "Violations of 31 U.S.C. § 3729(a)(1)(B), Using False Statements"
>
> Count III: "Violations of 31 U.S.C. § 3729(a)(1)(C), Conspiring to submit False Claims"
>
> Count IV: "Violations of the False Claims Act 31 U.S.C. § 3729 (a)(1)(G), Reverse False Claims"

[*Id.* at 23–26].

On August 12, 2022, the United States of America ("United States" or the "Government") notified the Court that, pursuant to 31 U.S.C. § 3730(b)(2) and (4), it was

---

[2] "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Pack v. Hickey*, 776 F. App'x 549, 553 (10th Cir. 2019) (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007)). "Under the FCA, either the government may initiate the action itself or, as in this case, a private party, known as a relator, may bring a *qui tam* suit in the government's name." *Id.* (*citing United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1226 (10th Cir. 2017)).

[3] Dr. Zou is a former Sales Manager at Instec in Boulder, Colorado.  [Doc. 1 at ¶ 6].

electing to intervene partially in this action only with respect to the allegations that Dr. Zou

and Instec "violated the [FCA] . . . by failing to comply with the requirements of the [BAA]

. . . when selling Instec products to federal agencies and national laboratories." [Doc. 20

at 1–2]. The Government also notified the Court that it had "entered into and fully

executed a Settlement Agreement"[4] with Mr. Swanton, Dr. Zou, and Instec,[5] the terms of

which provide that:

> [I]n exchange for a monetary payment by Defendants Zou and Instec, [Mr. Swanton] has agreed to dismiss all claims in this action with prejudice, with the exception of certain claims against Defendants that are expressly reserved in the Settlement Agreement. The United States has agreed to dismiss with prejudice the Covered Conduct released in the Settlement Agreement. The dismissal of all other claims in the action shall be without prejudice to the United States.

[*Id.* at 2]; *see also* [Doc. 33-1 (Settlement Agreement)].

**Stipulation of Dismissal.** On September 1, 2022, before any of Defendants

responded to the Complaint, the United States and Mr. Swanton filed a Joint Stipulation

of Voluntary Dismissal ("Stipulation of Dismissal" or "Stipulation"). [Doc. 22]. They

represented that, "[p]ursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i)," they

stipulated and agreed to the following terms of dismissal:

> 1. The United States, Relator, and Defendants have entered into a written Settlement Agreement in compromise and resolution of certain claims asserted in this action.

---

[4] The Settlement Agreement was executed by all parties no later than August 5, 2022. [Doc. 33-1].

[5] The remaining Defendants—Zoe Science & Technology Co., Ltd. d/b/a Instec, Shanghai Hengshang Precision Instrument, Co. d/b/a Instec, and Bruker Corporation—are not parties to the Settlement Agreement. *See* [Doc. 33-1]. Indeed, as of this writing, counsel for those Defendants have yet to appear in this case.

2.  The United States and Relator have therefore agreed to voluntarily dismiss the above-captioned action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), subject to the terms of the Settlement Agreement.

3.  The dismissal shall be with prejudice to Relator as to all claims in the above-captioned action subject to the exceptions of such release as set forth in the Settlement Agreement.

4.  The dismissal shall be with prejudice to the United States as to the Covered Conduct released in the Settlement Agreement.  The dismissal shall be without prejudice to the United States as to those claims asserted in the Complaint but not included within the Covered Conduct.

5. Each party shall bear their own fees and costs, except as provided by the terms of the Settlement Agreement.

6. The Relator's claims for attorneys fees and costs pursuant to 31 U.S.C. § 3730(d) shall not be dismissed by this Stipulation of Dismissal.

7. The United States consents to the dismissal of this action as set forth above and subject to the terms of the Settlement Agreement in consideration of the mutual promises and obligations of the Settlement Agreement.  The United States has investigated this matter, reviewed the underlying documents provided, and consulted with the appropriate government officials.  Having considered the totality of the circumstances, the United States believes it is now appropriate to dismiss this case as set forth above.

[*Id.* at 1–2].  Generally, dismissals filed pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure do not require an order of the court and are effective the date filed.  *See Schmier v. McDonald's LLC*, 569 F.3d 1240, 1241 (10th Cir. 2009); *De Leon v. Marcos*, 659 F.3d 1276, 1284 (10th Cir. 2011) (holding that dismissals under Rule 41(a)(1)(A)(i) are self-executing and strip the court of jurisdiction). The Clerk of Court accordingly terminated this case pursuant to the Stipulation of Dismissal on September 30, 2022.  [Doc. 24].

Mr. Swanton then took the position that the Settlement Agreement reserved claims against Defendants "for expenses, reasonable attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)(2) and for wrongful termination and other employment-related claims,

as well as claims not arising under the False Claims Act in his capacity as a relator on behalf of the United States." [Doc. 27 at ¶ 2]. Though the Defendants agreed that the expenses, reasonable attorneys' fees, and costs provided for by the FCA could be appropriately considered, they disagreed that Mr. Swanton had asserted any other claims, including employment claims, and declined to settle any additional claims. Because he could not resolve these issues with Defendants, Plaintiff-Relator claimed he therefore took steps "to secure service of process of the complaint in this case," thus leading to the waivers of service that Plaintiff-Relator filed on November 1, 2022. [*Id.* at ¶ 5]; *see also* [Doc. 25; Doc. 26].

Defendants Zou and Instec then filed a Motion to Dismiss, seeking dismissal of the Complaint in light of the Stipulation of Dismissal. *See* [Doc. 30]. On January 31, 2023, the same day he responded to the Motion to Dismiss, Plaintiff-Relator filed a Motion to Vacate and Correct the Voluntary Dismissal ("Motion to Vacate"), wherein he sought to "vacate and correct" the Stipulation of Dismissal on the basis that the FCA "requires written consent to the dismissal by the court stating the reasons for the consent." [Doc. 33 at 1]; *see also* [*id.* at 8 ("This motion is necessary to vacate and correct the dismissal in accordance with the intent of the parties and consistent with the FCA, 31 U.S.C. § 3730(b)(1), which requires a court order of dismissal.")]. Mr. Swanton contended that Federal Rule of Civil Procedure 41(a)(1) "does not apply when a statute, such as the FCA, requires a court order of dismissal" or when "certain conditions [are placed] on the dismissal with respect to claims pursuant to a settlement in which the parties agreed not to dismiss certain claims." [*Id.* at 1–2]. Instead, Plaintiff-Relator argued that the Court was required to enter an order dismissing this case pursuant to Federal Rule of Civil

Procedure 41(a)(2), which governs dismissal by court order.  [*Id.* at 2].  Plaintiff-Relator asserted, in the alternative, that "even if the joint stipulation of voluntary dismissal were to be considered an effective final dismissal, [he] relies on Rule 60(b)(6) as support for an order to reopen the case and to vacate and correct the dismissal."  [*Id.*].  Plaintiff-Relator also argued that the language of the Stipulation was such that he could continue the action and pursue additional claims.  [*Id.* at 13].  Defendants Zou and Instec responded to the Motion to Vacate, [Doc. 41], and Plaintiff-Relator replied thereafter, [Doc. 43].

After full briefing and oral argument, [Doc. 48], this Court granted in part and denied in part Plaintiff-Relator's Motion to Vacate, [Doc. 49].  The Court found that under the FCA, a *qui tam* action brought by a private individual "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."  [*Id.* at 13 (citing 31 U.S.C. § 3730(b)(1))].  Thus, the Court vacated the docket entry, [Doc. 24], terminating the case, [Doc. 49 at 14].  It then construed the Stipulation of Dismissal as a motion for dismissal under Rule 41(a)(2) of the Federal Rules of Civil Procedure.[6]  [*Id.* at 16].  But this Court disagreed that the language of the Stipulation contemplated or reserved Mr. Swanton's right to pursue additional causes of action in this case, including his employment-related claims.  [*Id.* at 16-19].  Ultimately, the Court dismissed the action, reserving only Plaintiff-Relator's requests for expenses,

---

[6] Three days after this Court issued its Memorandum Opinion and Order, the Supreme Court held that Rule 41 standards apply to dismissals under the FCA subject to the particularities of the FCA, albeit in a different context of whether the Government, having properly intervened, could dismiss an action over a relator's objection and discussing the need for the court to conduct a hearing.  *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 435 (2023).

reasonable attorneys' fees, and costs pursuant to 31 U.S.C. § 3730(d)(2).  [*Id.* at 20].  In light of the Court's determination that Mr. Swanton could not properly pursue his employment claims in this action, this Court denied Defendants' Motion to Dismiss as moot.  [*Id.*].  The Court also dismissed the Complaint and ordered Mr. Swanton to file a motion for attorney's fees and costs pursuant to 31 U.S.C. § 3730(d) no later than June 30, 2023.  [*Id.* at 21].

This instant Motion for Attorneys' Fees, [Doc. 58], followed.  Defendants have responded, [Doc. 61], and Plaintiff-Relator has replied, [Doc. 62].  This Court finds that oral argument will not materially assist in the resolution of this matter, and the Motion is ripe for determination.

## LEGAL STANDARDS

### I.   False Claims Act

"Congress passed the original False Claims Act in 1863 to combat rampant fraud in Civil War defense contracts," and it "covers all fraudulent attempts to cause the Government to pay out sums of money."  *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1194 (10th Cir. 2006) (internal quotation marks omitted).  The FCA (or the "Act") imposes liability on any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or] . . .
>
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government[.]

31 U.S.C. §§ 3729(a)(1)(A), (B), (G).  The FCA authorizes two avenues to combat such fraud.  First, it authorizes suit by the Attorney General of the United States against any person found violating § 3729.  *Id.* § 3730(a).  Second, the "FCA's *qui tam* provisions authorize a private individual—also known as a 'relator'—to bring a civil action to enforce its provisions on behalf of the government and to share in any resulting recovery."  *In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1013 (10th Cir. 2017) (citing 31 U.S.C. §§ 3730(b)(1), (d)).

### A.    Awards to Plaintiff-Relators

There is no dispute that the FCA expressly provides for awards to a settling *qui tam* plaintiff.  31 U.S.C. § 3730(d).  Relevant here, for both the claims that the United States partially intervened and those it did not, the statute provides for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs, to be awarded against the defendant.  *Id.* § 3730(d)(1), (2).  In determining the law applicable to the award of attorneys' fees and costs in FCA cases, courts have routinely looked to the principles used for awards in other federal fee-shifting statutes.  *See, e.g.*, *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000).

### B.    Lodestar Calculation

As the Parties acknowledge, the Court uses the lodestar calculation as a starting point to determine the appropriate amount of attorneys' fees.  *Compare* [Doc. 58 at 4], *with* [Doc. 61 at 2-3].  *See also United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 793 F. Supp. 2d 1260, 1264 (D. Colo. 2011) (applying the lodestar calculation in an FCA case); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (beginning with

the lodestar calculation in determining reasonable fees under 42 U.S.C. § 1988); *Hensley*

*v. Eckerhart*, 461 U.S. 424 (1983) (describing the lodestar calculation as "the most useful

starting point for determining the amount of a reasonable fee" in determining fees under

§ 1988).   To calculate the lodestar amount, the Court takes the reasonable number of

hours spent multiplied by the reasonable hourly rate.   *Maxwell*, 793 F. Supp. 2d at 1264.

While there is a "strong presumption" that the lodestar figure is reasonable, in some

instances, that presumption may be overcome if the lodestar does not adequately account

for a factor that may properly be considered in determining a reasonable fee.   *See Perdue*,

559 U.S. at 554.   As a general rule, the amount of an attorney's fees award is within the

discretion of the Court.   *See, e.g.*, *Hensley*, 461 U.S. at 433, 437.   "Courts need not

identify and justify every hour allowed or disallowed, as doing so would run counter to the

Supreme Court's warning that a request for attorney's fees should not result in a second

major litigation."   *United States ex rel. Shepard v. Grand Junction Reg'l Airport Auth.*, No.

13-cv-00736-CMA-CBS, 2017 WL 11556405, at *2 (D. Colo. July 24, 2017).

## ANALYSIS

Applying the lodestar method, Mr. Swanton moves for $306,842.50 in attorneys'

fees for the FCA action overall; $964.32 in expenses; and attorneys' fees for the

preparation and litigation of this instant Motion.   [Doc. 58].   Defendants do not challenge

Mr. Swanton's request for reasonable expenses in the amount of $964.32.   *Compare*

[Doc. 58 at 14 (citing [Doc. 58-3 at ¶ 58; *id.* at 76])], *with* [Doc. 61].   Nor do Defendants

challenge the billing rates of the respective attorneys.   *Compare* [Doc. 58 at 12–14], *with*

[Doc. 61].

But Defendants argue that the Court should order no more than $160,000 in Plaintiff-Relator's attorneys' fees, because of the actions of Mr. Swanton during the course of this action – namely, his "refusal to negotiate" about fees and costs and "faulty pleading and gamesmanship." [Doc. 61 at 7]. Specifically, Defendants assert that they should not be required to compensate Plaintiff-Relator for fees resulting after the settlement in this action, because those are attributable to Plaintiff-Relator's delay in providing an accounting of fees to Defendants, or for fees associated with claims that were not brought within this action. *See generally* [*id.*]. In Reply, Plaintiff-Relator argues that Defendants have not met their burden of proof in opposing the reasonableness of the attorneys' hours claimed and that the cases cited by Defendants are inapposite. [Doc. 62 at 4–5, 8]. Instead, Mr. Swanton contends that he is entitled to his fees incurred after the Settlement Agreement, because of Defendants' litigation tactics and "in order to preserve the fees and costs issue." [*Id.* at 2].

## A.    Burden of Proof

The Court first considers the burden of proof for the instant Motion for Attorneys' Fees. The burden of proof as to the reasonableness of attorney's fees, costs and expenses falls upon the Plaintiff-Relator. *See Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (observing, in context of a fee request under 42 U.S.C. § 1988, the claimant who files an application for attorney's fees, has the burden to prove that the fee is reasonable). Once the Plaintiff-Relator carries this initial burden, the Court presumes this lodestar figure to be reasonable. *See Perdue*, 559 U.S. at 554. Nevertheless, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") recognizes after the calculation of the lodestar, a court may "adjust the lodestar upward

or downward to account for the particularities of the suit and its outcome."[7]  *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012).

**B.      Reasonable Rate**

This Court begins with the reasonable rates of the respective attorneys because it is uncontested.  A reasonable rate generally depends on "what lawyers of comparable skill and experience practicing in the area [and community] in which the litigation occurs would charge for their time."  *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

This Court has independently examined the rates claimed by David Colapinto ("Mr. Colapinto") ($650), Maraya Best ("Ms. Best") ($375), Kayla Conti ("Ms. Conti") ($125), and Kenneth Harmon ("Mr. Harmon") ($650); and the supporting affidavits by Mr. Colapinto [Doc. 58-2], Mr. Harmon [Doc. 58-3], and Clayton Wire [Doc. 58-5].  In addition, while this Court is not bound by the findings of other district courts, *see United States v. Rhodes,* 834 F. App'x 457, 462 (10th Cir. 2020) ("[D]istrict courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts."), this Court finds it appropriate to consider the determinations of reasonable rates by other district courts because it is relevant to establish the prevailing market rate, *see Guides*, 295 F.3d at 1079 (holding that a district

---

[7] Courts outside of the Tenth Circuit have described a shifting burden, i.e., after "the relator has met his initial burden of proof, the party opposing the fee award then has the burden of challenging the reasonableness of the fee requested."  *See, e.g.*, *United States ex rel. Greendyke v. CNOS, P.C.*, No. 4:04-cv-04105-LLP, 2007 WL 2908414, at *6 (D.S.D. Sept. 27, 2007) (citing *United States ex rel. Poulton v. Anesthesia Assocs., Inc.*, 87 F. Supp. 2d 351, 354 (D. Vt. 2000)).  This Court does not expressly adopt this framework, because it does not find it rooted in Tenth Circuit law.

court may use other relevant factors, including its own knowledge, to establish the reasonable rate). In 2017, the Honorable Christine M. Arguello found that rates in the range of $200-$300 per hour to be reasonable in an FCA case. *See Shepard*, 2017 WL 11556405, at *4. In another *qui tam* case in 2015, the Honorable William J. Martínez found that the hourly rate of $825 per hour was too high. *See In re Davita Healthcare Partners, Inc.*, No. 12-cv-02074-WJM-CBS, 2015 WL 3582265, at *4 (D. Colo. June 5, 2015). However, Judge Martínez approved rates from $450 to $775. *See* [*In re Davita Healthcare Partners, Inc.*, No. 12-cv-02074-WJM-CBS, ECF No. 107].

In light of the record before it, this Court is satisfied that the rates sought by Plaintiff-Relator for his respective attorneys is reasonable – particularly given the lack of any objection by Defendants. *Cf. Maxwell*, 793 F. Supp. 2d at 1264 (finding the hourly rate reasonable when defendant did not specifically dispute it).

**C.    Reasonable Number of Hours**

Plaintiff-Relator argues that his attorneys' fees are reasonable because the matter was complex; counsel devoted a significant amount of time assisting the Government throughout the two-year investigation; and it was necessary for Mr. Swanton to serve the complaint and file the motion to vacate in order to assert his claim for attorneys' fees and costs. Defendants contend that Plaintiff-Relator's attorneys' fee award should be capped at $160,000 and that he should not be awarded any fees after the settlement in this action because Mr. Swanton failed to disclose to Defendants information regarding attorneys' fees in order to leverage that issue into a "global settlement" of claims that were not part of this action.

**Motion to Vacate.**  Mr. Swanton argues that "Defendants' vigorous defense of the case after the settlement with the government was announced," required him to file to Motion to Vacate in order to preserve his ability to pursue attorney's fees under the FCA. [Doc. 58 at 9].  This Court respectfully disagrees.

On September 1, 2022, Mr. Swanton and the Government jointly filed a Joint Stipulation of Voluntary Dismissal in which they agreed to voluntarily dismiss the above-captioned action pursuant to Rule 41(a)(1)(A)(i), subject to the terms of the Settlement Agreement, and expressly reserved the "Relator's claims for attorneys fees and costs pursuant to 32 U.S.C. § 3730(d)."  [Doc. 22].  This Stipulation was executed by both Mr. Colapinto and Mr. Harmon as Mr. Swanton's attorneys.  [*Id.* at 3].  Despite this, Mr. Swanton did not immediately move for his attorneys' fees under the FCA.  Instead, he served the Complaint on Defendants – despite having executed and filed a Stipulation of Voluntary Dismissal that unequivocally stated that "[t]he United States and Relator have therefore agreed to voluntarily dismiss the above-captioned action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), subject to the terms of the Settlement Agreement," and "[t]he dismissal shall be with prejudice as to all claims in the above-captioned action subject to the exceptions of such release as set forth in the Settlement Agreement."  [*Id.*¶¶ 2–3].  As discussed in the Memorandum Opinion and Order, neither the Settlement Agreement nor the Stipulation of Dismissal contemplated that additional, un-pleaded claims were to be brought in *this action*.  [Doc. 49 at 18].  In addition, both the Settlement Agreement and the Stipulation of Dismissal made clear that the settlement did not include un-pleaded claims, such as retaliation under the FCA, wrongful termination, or other employment-related claims.

While procedurally, it was appropriate for the Court to enter an order dismissing the case pursuant to Rule 41(a)(2) instead of allowing the Stipulation of Dismissal to be self-effectuating under Rule 41(a)(1), the responsibility for any mistake and subsequent need to procedurally correct the dismissal were self-inflicted and thus, lie squarely with Plaintiff-Relator (and the Government).  More importantly, the Court finds, based on the record before it, the impetus for the procedural correction was not fees pursuant to § 3730(d).  The thrust of the Motion to Vacate was Plaintiff-Relator's desire to assert additional causes of action against Defendants, once it became clear that they were unwilling to resolve such claims through a global settlement.  But there appears no real dispute – despite Mr. Swanton's argument to the contrary – that Defendants would have liability for some amount of attorneys' fees and costs under the FCA.  In their Motion to Dismiss, Defendants acknowledged that Plaintiff-Relator could still pursue such fees and costs pursuant to § 3730(d)(2) independently of the dismissed Complaint, given that such relief is expressly carved out in the Settlement Agreement and the Stipulation of Dismissal. *See* [Doc. 30 at 7–9 (proposing that Plaintiff-Relator "could have filed a motion to enforce the settlement agreement")].  This Court has confirmed, pursuant to the transcript,[8] that defense counsel similarly acknowledged Plaintiff-Relator's right to pursue attorneys' fees and costs associated with the settled action during the Status Conference held before this Court on April 10, 2023.  [Doc. 48].  And significantly, the Settlement Agreement and Stipulation of Dismissal did not alter this Court's jurisdiction to consider Plaintiff-Relator's motion for attorneys' fees even after dismissal of the underlying *qui tam*

---

[8] The Court referred to a preliminary, nonpublic version of the transcript of the April 10, 2023 Status Hearing.

claims. *Cf. United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1057 (10th Cir. 2004) (holding that the district court had subject matter jurisdiction to consider attorneys' fees even in light of the dismissal of the underlying qui tam action for lack of subject matter jurisdiction). Thus, this Court cannot conclude that the Motion to Vacate was directed at preserving Plaintiff-Relator's right to pursue attorneys' fees and costs for the settled claims under 31 U.S.C. § 3730(d). Rather, based on the entire record before it, this Court concludes that the Motion to Vacate was an attempt by Mr. Swanton to bring his unasserted, employment-related claims against Defendants in this action – as opposed to a separate one.[9] And while Rule 12 of the Federal Rules of Civil Procedure should not be invoked unnecessarily, this Court cannot fault Defendants for moving to dismiss a Complaint when Plaintiff-Relator had already agreed to dismiss the entire action and for declining to settle claims that were never part of this action. To that end, this Court concludes that any hours associated with the service of the Complaint, the resulting Motion to Dismiss, and the Status Conference with this Court are also not reasonable.

**Unrelated Claims.** Under the express language of the FCA, the award of attorneys' fees and expenses is limited to a person who brings an action under subsection (b) of 31 U.S.C. § 3730 who prevails in collecting civil penalties and damages for false claims as identified by 31 U.S.C. § 3729. 31 U.S.C. § 3730(d). The core issues underlying the BAA claims that merited Government intervention and prompted settlement involved Defendants' false statements and representations to the United

---

[9] This Court takes judicial notice that Plaintiff-Relator has not filed a separate action asserting his employment-related claims in the United States District Court for the District of Colorado. *See* Fed. R. Evid. 201; *see also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[A court may] take judicial notice of its own files and records, as well as facts which are a matter of public record.").

States government that Instec's goods were made in the United States when they were, in fact, produced in China.  *See, e.g.*, [Doc.1 at ¶ 37; Doc. 58-1].  While a relator may assert claims based on retaliatory actions by a defendant that arise from his efforts to stop one or more violations of the FCA, his relief and claim for attorneys' fees arise from a separate statutory subsection, 31 U.S.C. § 3730(h)—not 31 U.S.C. § 3730(d).  Thus, to the extent that Plaintiff-Relator seeks any attorneys' fees and costs associated with an attempt to pursue non-asserted, employment-related causes of action – whether under the FCA, other statute, or common law, such relief is not appropriate under 31 U.S.C. § 3730(d) – the sole basis of this instant Motion.[10]  Similarly, any fees or costs associated with pursuing Defendants for alleged bribery of Chinese officials and possible FCPA[11] claims are not recoverable.  *See* [Doc. 58-3 at 41].

   ***Negotiations Regarding Settlement of Reasonable Fees.***  In arguing that "[a]ny legal fees incurred after the parties entered into the August 5, 2022 Settlement Agreement are barred due to Plaintiff's continuing refusal to provide Defendants with an accounting of reasonable attorney's fees," [Doc. 61 at ¶ 23], Defendants implicitly contend that <u>all</u> time spent preparing the Stipulation of Dismissal and negotiating "reasonable hours" is not recoverable as "reasonable."  This Court respectfully disagrees.

---

[10] In addition, the Supreme Court and the Tenth Circuit have long held that "if a plaintiff fails to prevail on claims unrelated to those on which he or she succeeds, work on the unrelated unsuccessful claims cannot be compensated."  *See Hensley*, 461 U.S. at 435; *Ramos*, 713 F.2d at 556.  Here, Mr. Swanton's unasserted employment-related claims are unrelated to whether Defendants falsely represented to the United States government that their products were made in the United States.

[11] Though undefined in Mr. Harmon's accounting, this Court presumes from the context that "FCPA" refers to the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd01, *et seq.*

First, time spent between the execution of the Settlement Agreement on August 5, 2022, and the filing of the Stipulation of Dismissal in September 2022, is reasonable.  The execution of the Settlement Agreement did not terminate the action before this Court, and this Court finds that hours dedicated to the review and filing of the Stipulation of Dismissal are reasonable.

Second, to the extent that Defendants engaged in negotiations regarding the resolution of any remaining issues – including the fees associated with the dismissed FCA claims – this Court finds that time associated with those negotiations is reasonable.  It is undisputed that Mr. Swanton and the Defendants had not resolved the attorneys' fees and costs associated with the FCA claims at that time, and this Court need not parse discussions that may have included more than simply statutory fees.[12]   Indeed, as Defendants acknowledge, this Court is not required – nor expected – to achieve auditing perfection.  *See* [Doc. 61 at ¶ 14 (citing *Fox v. Vice*, 563 U.S. 826 (2011); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (observing that a "request for attorney's fees should not result in a second major litigation'") (internal quotation marks omitted)))].

***Other considerations.***  Finally, this Court turns to other considerations that arose in its review of the claimed hours.  This Court is not persuaded that counsel should be compensated for hours devoted to seeking extensions of time from the Court, researching "meet and confer" obligations, or researching this Court's Civil Practice Standards – as every attorney who practices in this District is expected to be familiar with such

---

[12] This Court notes that Mr. Harmon has already discounted his reasonable hours by 50% to account for "workplace claims related aspects of the case."  *See, e.g.*, [Doc. 58-3 at 57].

requirements.[13]  In addition, there is nothing particularly complex about this instant Motion for Attorneys' Fees.   Thus, the Court has reduced the amount of time for Messrs. Colapinto and Harmon associated with the filing of this instant Motion, which is excessive – particularly for two practitioners who each have more than 30 years of experience and specialized expertise in the FCA.[14]

### D.   Lodestar Calculation

Applying these principles, this Court has made the following calculations for a total award of attorneys' fees of **$167,093.75**:

- <u>Mr. Colapinto</u>: 100 hours at a rate of $650 per hour for a total of **$65,000**.

- <u>Ms. Best</u>: 135.50 hours at a rate of $375 per hour for a total of **$50,812.50**.[15]

- <u>Ms. Conti</u>:  13.75 hours at a rate of $125 per hour for a total of **$1,718.75**.[16]

- <u>Mr. Harmon</u>: 76.25 hours at a rate of $650 per hour for a total of **$49,562.50**.[17]

---

[13] Administrative tasks, like preparing invoices and calculating hours, are also not recoverable.  *See, e.g.*, *Baxter Constr. Co. v. SF Constr. Inc.*, No. 22-cv-01117-NYW, 2024 WL 1537998, at *5 (D. Colo. Apr. 9, 2024) ("[I]t is well-settled that administrative tasks performed by attorneys or others are generally not recoverable as attorney's fees." (citing *J & J Sports Prods., Inc. v. Rosales*, No. 07-cv-01110-RPM-MEH, 2008 WL 596104, at *7 (D. Colo. Jan. 30, 2008))).

[14] Indeed, the combined fees for Messrs. Colapinto and Harmon for the filing of this instant Motion amount to over $50,000.00 – which constitutes approximately 16% of all fees claimed in this action.

[15] Ms. Best's hours conclude no later than April 9, 2021 – well before the Settlement Agreement or the Stipulation for Dismissal.   *See* [Doc. 58-2 at 77].   Thus, her hours remain unchanged.

[16] Ms. Conti's hours are limited to those incurred before January 13, 2023.  *See* [Doc. 58-2 at 69].

[17] While Mr. Harmon indicates that he anticipates a "further, supplemental submission" for work "undertaken in connection with the preparation of this motion on August 31 and in litigating this motion thereafter," [Doc. 58-3 at 7], as well as "time entries after July 25, 2023 through August 30, 2023," [*id.* at 7 n.3], this Court notes that such "supplemental

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     Plaintiff-Relator's Motion for Statutory Attorneys' Fees, Expenses and Costs

[Doc. 58] is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein;

and

(2)     Plaintiff-Relator Bryan Swanton is **AWARDED** the amount of $167,093.75

in attorneys' fees and $964.32 in costs, for a total amount of **$168,058.07**.

DATED: April 29, 2024                    BY THE COURT:

_____

Nina Y. Wang
United States District Judge

---

submission" has not been filed.  Based on the rulings contained herein, this Court will not
entertain any such supplemental submission.